IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| KATELYN ROBINSON, *et al.*, | HONORABLE KAREN M. WILLIAMS |
| Plaintiffs, | |
| v. | Civil Action<br>No. 1:24-cv-09334-KMW-EAP |
| SUBARU OF AMERICA, INC., | |
| Defendant. | **OPINION** |

**Sergei Lemberg, Esq.**
LEMBERG LAW, LLC
43 Danbury Road
Wilton, CT 06897

**Neal D. Walters, Esq.**
**Casey G. Watkins, Esq.**
**Jordan L. Meyer, Esq.**
**Kristen A. Petagna, Esq.**
BALLARD SPAHR LLP
700 East Gate Drive, Suite 330
Mt. Laurel, NJ 08054-0015

*Counsel for Plaintiffs Katelyn Robinson,*
*Ricardo Chaidez, Michael Brenner, Michelle*
*Anders, and Jessica Taylor*

*Counsel for Defendant Subaru of America,*
*Inc.*

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

This putative multistate class action arises from allegations that certain Subaru vehicles

contain a defect in their side-view mirrors. Plaintiffs Michelle Anders, Michael Brenner, Jessica

Taylor, Katelyn Robinson, and Ricardo Chaidez (collectively, "Plaintiffs") each purchased or

leased a Subaru vehicle in their respective home states—Alaska, California, Florida, Texas, and

Utah.  Plaintiffs allege that, after taking possession and driving their vehicles, they discovered the

side-view mirrors shake and vibrate while the vehicle is in motion, impairing visibility and creating

a safety risk. On behalf of themselves and similarly situated purchasers and lessees in their home states, Plaintiffs bring this action against Subaru of America, Inc. ("Defendant" or "Subaru"), asserting common-law claims for breach of express and implied warranties, unjust enrichment, fraudulent omission or concealment, as well as statutory claims for alleged violations of state consumer-protection statutes.

Presently before the Court is Defendant's Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which Plaintiffs oppose. For the reasons set forth below, the Motion is granted in part and denied in part

## II.    BACKGROUND

Defendant is the United States subsidiary of Subaru Corporation of Japan. *See* Am. Compl. ¶ 17. Defendant markets, distributes, and sells Subaru-branded vehicles in the United States through a network of authorized dealerships. *See id.* Between December 2023 and July 2024, each Plaintiff purchased or leased—through an authorized dealer in their respective home states—one of three Subaru models: a 2024 Crosstrek, a 2024 Ascent, or a 2023–2024 Solterra (collectively, the "Class Vehicles"). *See id.* ¶¶ 1, 22, 41, 60, 73, 87.

In the Amended Complaint, Plaintiffs allege that the Class Vehicles share a common defect in the side-view mirror assemblies (the "Mirror Defect") that causes the driver-side exterior mirror to shake or vibrate during ordinary driving, particularly at highway speeds. *See id.* ¶¶ 3–4, 107–110. These vibrations allegedly distort the reflected view of the roadway and surrounding traffic, impairing the driver's ability to gauge distance and detect other vehicles, especially at night. *See id.* ¶¶ 4–5, 110–111. Plaintiffs also contend that the Mirror Defect renders the Class Vehicles noncompliant with Federal Motor Vehicle Safety Standard No. 111, which requires rearview

mirrors to provide a clear, undistorted view to the rear and to minimize headlight glare. *See id.* ¶¶ 5, 111.

After noticing the alleged Mirror Defect, Plaintiffs sought repairs under Defendant's New Vehicle Limited Warranty (the "NVLW"). *See id.* ¶¶ 28, 47, 65, 79, 92. The NVLW covers defects in materials or workmanship for 36 months following purchase or lease, or 36,000 miles, whichever occurs first. *See id.* Plaintiffs allege that Defendant's authorized dealers did not remedy the condition: some allegedly replaced the mirror assembly with parts that exhibited the same vibration, while others declined to perform repairs on the ground that the vibration was "normal" or that the vehicle was "operating as designed." *See id.* ¶¶ 36–39, 55–57, 70, 84, 97.

The Amended Complaint further alleges that Defendant had prior knowledge of the Mirror Defect, yet continued to market and sell the Class Vehicles as "safe, reliable, and high-quality" automobiles. *See id.* ¶¶ 8, 105–107, 118–124. Plaintiffs contend that Defendant's knowledge can be inferred from information to which it purportedly had access, including pre-production testing; warranty-claims and parts-order data; and consumer complaints submitted through dealers, customer-service channels, and Subaru's internal reporting systems. *See id.* ¶¶ 125–137. Plaintiffs also point to consumer complaints filed with the National Highway Traffic Safety Administration ("NHTSA") and to posts on Subaru-owner forums and social-media platforms, which Defendant allegedly monitors, where owners of the Class Vehicles reported similar mirror vibration issues soon after purchase. *See id.* ¶¶ 125–137. Finally, Plaintiffs cite a Subaru Technical Service Bulletin issued in 2015 that addressed mirror vibrations in other vehicle models. *See id.* ¶¶ 113, 119–122.

Plaintiffs allege that Subaru's point-of-sale disclosures and marketing materials shaped their purchasing decisions while omitting any mention of the Mirror Defect. Each Plaintiff alleges that, before purchasing or leasing a Class Vehicle, the Plaintiff reviewed the Monroney sticker

affixed to the vehicle at the dealership. The Amended Complaint alleges that Subaru's Monroney stickers list the vehicle's suggested retail price; standard and optional equipment (including safety and warranty features); fuel-economy information; crash-safety ratings; and the origin of major components—information Plaintiffs allege is intended to induce consumers to purchase or lease the vehicle. *See id.* ¶¶ 25, 44, 62, 76, 89. Plaintiffs further allege that the stickers, together with Subaru's accompanying marketing materials, conveyed that the Class Vehicles were safe, reliable, and high quality, and that those representations were material to their purchasing decisions. *See id.* ¶¶ 26, 45, 63, 77, 90. Plaintiffs allege that neither the Monroney stickers nor any other Subaru disclosures revealed the Mirror Defect and that, had Defendant disclosed it, they would not have purchased or leased the vehicles, or at least would have paid less. *See id.* ¶¶ 29–30, 48–49, 66–67, 80–81, 93–94.

Based on the foregoing allegations, Plaintiffs' nineteen-count Amended Complaint asserts various causes of action under the laws of their respective states, seeking a range of monetary and equitable relief. The claims fall into two general categories. First are warranty and quasi-contract claims arising from Defendant's alleged failure to cure the Mirror Defect, including breach of express and implied warranties (Counts IV–V, VII–VIII, X–XIII, XVII, XIX) and unjust enrichment (Counts II–III). Second are fraud-based claims arising from Defendant's alleged failure to disclose the Mirror Defect, including common-law claims for fraudulent omission or concealment (Count I) and statutory consumer-protection claims under Alaska's Unfair Trade Practices and Consumer Protection Act (Count IX); California's Consumers Legal Remedies Act (Count XIV) and Unfair Competition Law (Count XV); Florida's Deceptive and Unfair Trade

Practices Act (Count XVIII); Texas's Deceptive Trade Practices–Consumer Protection Act (Count VI); and Utah's Consumer Sales Practices Act (Count XX[1]).

### III.    LEGAL STANDARDS

#### A.    Rule 8(a)(2)

Federal Rule of Civil Procedure 8(a) requires plaintiffs to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not suffice if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[1] The Amended Complaint numbers its Counts from I through Count XX, but erroneously omits Count XVI, causing all subsequent counts to be mislabeled. For clarity, the Court refers to the Counts by their original numbering.

*Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 550 U.S. at 557).

### B.    Rule 9(b)

Claims sounding in fraud are governed by the more stringent pleading standard under Rule 9(b): "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This rule shares a "common foundation" with the ordinary pleading standard under Rule 8(a)(2) "in that speculative or threadbare allegations along with legal conclusions are disregarded, and the remaining allegations are generally taken as true." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 680 (3d Cir. 2023). However, Rule 9(b) imposes a "heightened pleading requirement" to ensure that a defendant is sufficiently placed on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223–24 (3d Cir. 2004)) (alteration in original).

To state the "circumstances" of alleged fraud with the requisite degree of "particularity" required by Rule 9(b), plaintiffs may either "plead or allege the date, time and place of the alleged fraud," or utilize some other means that "inject precision or some measure of substantiation into a fraud allegation." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). Plaintiffs "also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Ne. Revenue Servs., LLC v. Maps Indeed, Inc.*, 685 F. App'x 96, 102 (3d Cir. 2017) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)).

## IV.    DISCUSSION

In its Motion, Defendant seeks dismissal of certain, but not all, of Plaintiffs' claims. In addition, the parties' briefing reflects that certain claims and arguments have been abandoned. The Court therefore addresses only those claims and issues that remain in dispute.

### A.    Breach of Express Warranty

The Court begins with the express-warranty claims asserted under California law.[2] Plaintiff Brenner, a California resident, leased a new 2024 Subaru Solterra on July 2, 2024. *See* Am. Compl. ¶ 60. Before he executed the lease, Defendant's authorized dealer represented that the vehicle would be covered by Subaru's NVLW, under which it promised to "correct defects in material or workmanship" without charge within 36 months or 36,000 miles in service, whichever occurs first. *Id.* ¶ 64. Brenner alleges that he later experienced vibration in the driver-side exterior mirror and returned the vehicle to the dealership for service on September 9, 2024. *See id.* ¶¶ 68–69. Although the dealer confirmed the condition, it characterized the vibration as "normal" and performed no repair. *See id.* ¶ 70. Brenner alleges that the vehicle remains unrepaired and that the mirror continues to vibrate, impairing his ability to operate the vehicle safely. *See id.* ¶ 72.

On these allegations, Brenner asserts three causes of action for breach of express warranty: one claim pled under the Uniform Commercial Code ("UCC"), as adopted in California (Count XI), and two under the Song-Beverly Consumer Warranty Act (Counts XII–XIII). The Court

---

[2] Defendant interprets the Amended Complaint as alleging both a design defect and a defect in materials or workmanship. Accordingly, Defendant moves to dismiss all breach-of-warranty claims to the extent they are premised on a design defect—a condition it contends is not covered by the NVLW. *See* Def.'s Mot. at 8–10. The distinction between defect in design and defect in materials or workmanship is largely a "matter of semantics," so when "sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives." *Alin v. Am. Honda Motor Co., Inc.*, No. 08-cv-4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010). In any case, the Court denies the Motion on this ground as moot because Plaintiffs have confirmed that they have *not* alleged a design defect. *See* Pls.' Opp'n at 4.

addresses only Counts XI and XII.[3]

## 1. *California Commercial Code (UCC)*

Section 2-313 of the UCC governs the creation of express warranties in the sale of goods. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 (9th Cir. 2015); *see also* Cal. Com. Code § 2313. Where, as here, the theory is that the seller breached an express warranty by failing to repair a defect, a plaintiff must plead facts supporting: (1) the existence of "an express warranty to repair defects given in connection with the sale of goods"; (2) "a defect covered by the warranty"; (3) "the buyer's notice to the seller of such a defect within a reasonable time after its discovery"; (4) "the seller's failure to repair the defect in compliance with the warranty"; and (5) "resulting damages." *Taspinar v. Mercedes-Benz USA, LLC*, No. 2:24-cv-10504, 2025 WL 1543612, at *2 (C.D. Cal. Feb. 3, 2025) (citations omitted) (quoting *Orichian v. BMW of N. Am., LLC*, 226 Cal. App. 4th 1322, 1333–34 (2014)).

Here, Defendant challenges Count XI on two grounds, each of which implicates the first element—whether an express warranty exists. First, Defendant contends that Brenner has not sufficiently established the creation of an express warranty because he does not allege "exposure to, or awareness of, the express warranty terms at the time of the transaction." Def.'s Mot. at 12. In Defendant's view, Brenner must allege not only that he "read" and "understood" the NVLW, *id.*, but also that he possessed "specific knowledge of its terms" before leasing the vehicle, Def.'s Reply at 7. The Court disagrees.

Section 2-313 provides, in relevant part, that an express warranty is created when an "affirmation of fact or promise" relating to the goods "becomes part of the basis of the bargain."

---

[3] Counts XII and XIII respectively assert claims under §§ 1793.2(d)(2) and (b) of the SBA. Although Defendant purports to move for dismissal of both claims, it offers a single argument challenging only the "reasonable number of attempts" element relevant to subdivision (d)(2); it offers no separate argument addressing subdivision (b). The Court therefore declines to consider Count XIII, and the motion is denied as to that claim.

Cal. Com. Code § 2313(1)(a). The California Supreme Court has observed that the adoption of § 2-313's basis-of-the-bargain requirement worked a "significant change" in California's pre-UCC warranty law, which had demanded proof of reliance on the seller's representation. *Hauter v. Zogarts*, 14 Cal. 3d 104, 115, 534 P.2d 377, 383 (1975); *see also Keith v. Buchanan*, 173 Cal. App. 3d 13, 22 (1985). This has "generated significant comment and disagreement" among state and federal courts alike. *Weinstat v. Dentsply Int'l., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010). While courts generally agree that § 2-313 has relaxed California's pre-UCC reliance requirement, they remain divided on the extent to which it does so, or even if the requirement continues to exist at all. *See, e.g.*, *Watkins v. MGA Ent., Inc.*, 574 F. Supp. 3d 747, 757 (N.D. Cal. 2021) (surveying three approaches taken by courts); *In re 100% Grated Parmesan Cheese*, 393 F. Supp. 3d 745, 762–63 (N.D. Ill. 2019) (same). This Motion, however, does not require the Court to resolve that broader debate.

For present purposes, it is sufficient to note the distinction courts draw between (1) promises contained in "express *written* warranties," like the NVLW here, and (2) other alleged promises contained in materials that are "not automatically part of the parties' contract," such as "marketing materials and [] owner's manuals." *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1089 (N.D. Cal. 2021) (emphasis in original); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1182 (C.D. Cal. 2010). As to the latter category, plaintiffs generally must allege that they "heard, read, or were otherwise aware" of an extracontractual statement to plausibly plead that it formed "part of the basis of the bargain," as § 2-313 requires. *In re Toyota RAV4*, 534 F. Supp. 3d at 1090 (reasoning that "documents not formally part of the contract cannot be considered an aspect of the agreement if plaintiffs never saw or had any awareness of them"). But courts applying § 2313 have

not imposed the further requirement Defendant advocates here—namely, that a consumer must plead that he reviewed and understood the specific terms of an express written warranty before contracting in order to enforce it.

Here, Brenner alleges that, before signing the lease, Defendant's authorized dealer assured him that the vehicle would be accompanied by Subaru's NVLW, under which it promised to "correct defects in material or workmanship" without charge within 36 months or 36,000 miles, whichever occurs first. Am. Compl. ¶ 64. At the pleading stage, those allegations plausibly support that Defendant's promise to repair defects was given in connection with the transaction and formed part of the "basis of the bargain" under § 2-313. *See In re Toyota RAV4*, 534 F. Supp. 3d at 1090.

Alternatively, Defendant argues that Plaintiff Brenner fails to allege "sufficient detail about the terms of the warranty." Def.'s Mot. at 11. The Court disagrees. The Amended Complaint quotes the operative repair promise, which is verified by a copy of the NVLW Defendant itself has provided. Defendant is surely "on notice of the terms" sought to be enforced, and no more is required to state a plausible claim. *McCarthy v. Toyota Motor Corp.*, No. 8:18-cv-00201, 2018 WL 6318841, at *7 (C.D. Cal. Sept. 14, 2018); *see also Nickerson v. Goodyear Tire & Rubber Corp.*, No. 8:20-cv-00060, 2020 WL 4937561, at *4 (C.D. Cal. June 3, 2020).

In short, the Court finds that Brenner's allegations are sufficient to maintain a cause of action for breach of express warranty under UCC § 2-313. Accordingly, Defendant's Motion is denied as to Count XI.

## 2. *Song-Beverly Consumer Warranty Act*

The Court next turns to Brenner's express-warranty claim under the Song-Beverly Consumer Warranty Act ("SBA"). The California Legislature enacted the SBA in 1970 "to regulate warranties and strengthen consumer remedies for breaches of warranty." *Keegan v. Am.*

*Honda Motor Co.*, 838 F. Supp. 2d 929, 944 (C.D. Cal. 2012). Consistent with that purpose, the SBA is designed to "provide greater protections and remedies" extending beyond those available under the UCC or common law. *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 921 (C.D. Cal. 2010) (quoting *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303 (2009)).

When a buyer discovers a nonconformity in a consumer good, the SBA requires the buyer to deliver the good to a repair facility maintained by the manufacturer in California. *See* Cal. Civ. Code § 1793.2(c).[4] In turn, the statute obligates manufacturers and retailers to commence and complete services and repairs on new motor vehicles within certain timeframes. For new motor vehicles, § 1793.2(d)(2) provides that if, "after a reasonable number of attempts," the vehicle is not repaired and brought into compliance with an express warranty, the manufacturer must—at the buyer's election—"either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer." Cal. Civ. Code § 1793.2(d)(2). To state a claim under § 1793.2(d)(2), a plaintiff must allege facts showing:

> (1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle (the nonconformity element); (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair (the presentation element); and (3) the manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts (the failure to repair element).

*Fitzpatrick v. Ford Motor Co.*, 680 F. Supp. 3d 1177, 1185 (C.D. Cal. 2023) (quoting *Donlen v. Ford Motor Co.*, 217 Cal. App. 4th 138, 152 (2013)).

Here, Defendant's Motion targets the third prong. It argues that Brenner cannot state a claim under § 1793.2(d)(2) because he presented the vehicle for repair only once, on September 9, 2024. Defendant reasons that a single repair visit cannot satisfy the statute's requirement that

---

[4] To be clear, the SBA extends the foregoing protections to both purchasers and lessees. *See Moradian v. Mercedes-Benz USA, LLC*, No. 22-cv-09979, 2022 WL 4596650, at *3 (C.D. Cal. Mar. 17, 2022).

liability attach only "after a reasonable number of attempts," and that Brenner consequently fails to state a claim. The Court agrees.

As numerous California courts have recognized, the phrase "reasonable number of repair attempts" plainly anticipates "*more than one opportunity* to repair the vehicle to bring it into conformity." *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 689 F. Supp. 3d 760, 767 (C.D. Cal. 2023) (quoting § 1793.2(d)(1)) (emphasis in original). Thus, plaintiffs who "bought their vehicle for repair only once or not at all cannot maintain a breach of warranty claim" under § 1793.2(d)(1). *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1117–18 (C.D. Cal. 2021); *see also Silvio v. Ford Motor Co.*, 109 Cal. App. 4th 1205, 1208–09 (2003) ("The statute does not require the manufacturer to make restitution or replace a vehicle if it has had only one opportunity to repair that vehicle.").

Brenner does not dispute that he sought repairs only once. He argues, however, that a second visit was unnecessary because the dealer confirmed the condition and stated it was "normal," indicating that no repair would be performed. *See* Pls.' Opp'n at 8; Am. Compl. ¶ 70. That contention does not satisfy the statutory requirement for relief under § 1793.2(d)(2). Whatever the dealer's explanation on the first visit, Brenner alleges only a single presentation for repair. On the facts pled, Song-Beverly's replacement-or-restitution remedy under § 1793.2(d)(2) is therefore not available.

This conclusion does not leave Brenner without a statutory avenue for the conduct he alleges. The SBA separately addresses failures to commence or complete repair service in a timely manner, including in connection with a single repair attempt. *See* Cal. Civ. Code § 1793.2(b). Brenner has pleaded a separate claim on that theory in Count XIII. He has not, however, plausibly

alleged entitlement to relief under § 1793.2(d)(2) in Count XII. Defendant's Motion is therefore granted as to Count XII.

### B.   <u>Unjust Enrichment</u>

Defendant next moves to dismiss Plaintiffs' unjust enrichment claims. It advances several arguments, including that unjust enrichment is unavailable because Plaintiffs have not alleged the absence of an adequate remedy at law. The Court agrees, and resolves the Motion on that ground.[5]

Across the jurisdictions implicated here, unjust enrichment is an equitable theory that requires, at a minimum, allegations that (1) the plaintiff conferred a benefit on the defendant, and (2) retention of the benefit would be unjust under the circumstances. *See Faulk v. JELD-WEN, Inc.*, 735 F. Supp. 3d 1106, 1123 (D. Alaska 2024); *Yan Guo v. Kyani, Inc.*, 311 F. Supp. 3d 1130, 1152 (C.D. Cal. 2018); *Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022); *Molzan v. Bellagreen Holdings, L.L.C.*, 112 F.4th 323, 335 (5th Cir. 2024) (discussing Texas law); *Desert Miriah, Inc. v. B & L Auto, Inc.*, 12 P.3d 580, 582 (Utah 2000). However, because unjust enrichment is equitable in nature, it is generally available only where the plaintiff lacks an adequate remedy at law. *See Haines v. Comfort Keepers, Inc.*, 393 P.3d 422, 428 (Alaska 2017); *Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1172 (C.D. Cal. 2022); *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1235 (S.D. Fla. 2021); *R.M. Dudley Const. Co. v. Dawson*, 258

---

[5] To the extent Defendant argues as a threshold matter that Alaska law does not recognize a cause of action for unjust enrichment, its Motion is denied. *See Faulk v. JELD-WEN, Inc.*, 735 F. Supp. 3d 1106, 1124 (D. Alaska 2024) (treating an unjust-enrichment claim as one for restitutionary relief on Rule 12(b)(6) motion and reaching its merits). Insofar as Defendant offers the same argument as to Plaintiffs' Texas unjust-enrichment claim, its Motion is also denied. Texas law is notably divided on whether unjust enrichment can be asserted as an independent cause of action. *Compare, e.g.*, *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App. 2007) ("Unjust enrichment is an independent cause of action."), *with Richardson Hosp. Auth. v. Duru*, 387 S.W.3d 109, 114 (Tex. App. 2012) ("This Court has held that unjust enrichment is not an independent cause of action."); *see also In re KP Eng'g, LP*, No. 19-03707, 2022 WL 3356409, at *5 (S.D. Tex. Aug. 15, 2022) ("It is unclear under Texas law whether unjust enrichment is an independent cause of action, or simply a theory of recovery."). Defendant did not meaningfully address this split in its opening brief and the Court therefore declines to address any argument, raised for the first time in its Reply, as to why or how the Court should resolve it.

S.W.3d 694, 704 (Tex. App. 2008); *Brumbelow v. L. Offs. of Bennett & Deloney, P.C.*, 372 F. Supp. 2d 615, 623 (D. Utah 2005).

Here, Plaintiffs do not identify any form of relief unavailable through their legal causes of action. Instead, they argue that unjust enrichment should proceed as an alternative theory because their warranty claims may ultimately fail—for example, if the Mirror Defect is found to fall outside the NVLW's coverage. *See* Pls.' Opp'n at 26. In other words, because their breach of warranty claims might fail on their merits, they submit that they should be permitted to plead a claim for unjust enrichment in the alternative. *See id.* This argument is unavailing.

Unjust enrichment pivots on the "availability of a remedy at law"—not on the "viability of that remedy." *Cohen v. Subaru of Am., Inc.*, No. 1:20-cv-08442, 2022 WL 721307, at *34 (D.N.J. Mar. 10, 2022) (internal quotation marks omitted) (dismissing unjust enrichment claims pled under California and Florida law). While courts have allowed unjust enrichment claims to be pled in the alternative to contract-based claims, they have only done so when there is some dispute as to the validity or enforceability of such an agreement. *See, e.g.*, *Rollolazo v. BMW of N. Am., LLC*, No. 16-cv-00966, 2017 WL 6888501, at *12 (C.D. Cal. May 2, 2017) (applying Texas and Utah law) (holding that plaintiffs cannot maintain unjust enrichment claims where valid express warranty governs the parties' relationship with respect to the particular subject matter); *Armstrong v. BMW of N. Am., LLC*, No. 23-cv-3046, 2025 WL 957889, at *18 (D.N.J. Mar. 31, 2025) (applying Florida law) ("An unjust enrichment claim can only be pled in the alternative if one or more parties contest the existence of an express contract governing the subject of the dispute."); *Faulk v. JELD-WEN, Inc.*, 735 F. Supp. 3d 1106, 1123 (D. Alaska 2024) (applying Alaska law) (recognizing that unjust enrichment can be alternatively pled where "the defendant has received a benefit pursuant to a contract that is later determined to be unenforceable").

Here, by contrast, no such dispute exists. Rather, Plaintiffs seek to preserve an equitable claim as a fallback in the event their legal theories fail on the merits. That is not a basis to proceed on unjust enrichment where Plaintiffs have alleged legal claims seeking the same relief for the same alleged conduct. Accordingly, Defendant's Motion is granted as to Plaintiffs' unjust enrichment claims set forth in Count II.[6]

### C. <u>Fraud-Based Claims</u>

Defendant next moves to dismiss Plaintiffs' fraud-based claims. The Amended Complaint alleges that Defendant knew about the Mirror Defect before Plaintiffs purchased or leased the Class Vehicles, yet failed to disclose this material information to them. Plaintiffs allege that, had they known of the defect, they would not have purchased or leased the vehicles, or would have paid less for them. To this end, Plaintiffs assert two categories of fraud claims: (1) three claims for fraudulent concealment or omission under the common laws of Alaska, California, and Utah (Count I); and (2) five statutory consumer-fraud claims under Alaska's Unfair Trade Practices and Consumer Protection Act (Count IX); California's Consumers Legal Remedies Act (Count XIV) and Unfair Competition Law (Count XV); Texas's Deceptive Trade Practices–Consumer Protection Act (Count VI); and Utah's Consumer Sales Practices Act (Count XX).

#### 1. <u>*Sufficiency of Factual Allegations*</u>

As an initial matter, the Court registers the parties' apparent agreement that Rule 9(b) applies to all of Plaintiffs' fraud-based claims, whether pled as common-law claims for fraudulent

---

[6] Defendant has also moved with respect to Count III of the Amended Complaint, which is styled as a Texas-law claim for "Money-Had-And-Received." Am. Compl. at 42. "Claims for money had and received and unjust enrichment are materially and substantively identical." *Villarreal v. First Presidio Bank*, 283 F. Supp. 3d 548, 553 (W.D. Tex. 2017). Notwithstanding the unambiguous styling of Count III, Plaintiffs puzzlingly oppose dismissal by stating they have asserted "no such money-had-and-received cause of action," insisting instead that this count alleges "unjust enrichment, a separate and viable claim under Texas law." Pls.' Opp'n at 27. The Court finds Plaintiffs' position difficult to comprehend, particularly given that a Texas-law claim for unjust enrichment has already been pled separately under Count II. However Plaintiffs now wish to construe Count III, it is dismissed as either (i) abandoned to the extent it asserts a money-had-and-received claim, or (ii) duplicative to the extent it asserts unjust enrichment.

concealment/omission or for violations of state consumer-protection statutes. Instead, their quarrel lies with the degree of factual specificity required, and whether the Amended Complaint supplies it. Defendant contends that all of Plaintiffs' fraud-based claims fail because they do not allege the essential "who, what, when, where, and how" of the alleged misconduct, as required by Rule 9(b).[7] *See* Def.'s Mot. at 12–18. The Court disagrees.

Rule 9(b)'s particularity requirement entails a "slightly more relaxed burden" where the alleged fraud sounds in omission, given the inherent difficulty of pleading the "time, place, and specific content of an omission." *In re U.S. Vision Data Breach Litig.*, 732 F. Supp. 3d 369, 379 (D.N.J. 2024) (internal quotation marks omitted); *see also Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (cautioning district courts to apply Rule 9(b) "with some flexibility" and to "not require plaintiffs to plead issues that may have been concealed by the defendants"). Under this approach, a plaintiff adequately pleads omission-based fraud by alleging "what the omissions were," who was "responsible for failing to disclose the information," the "context of the omission and the manner in which it misled [the] plaintiff," and "what defendant obtained through the fraud." *See Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 264 (D.N.J. 2011) (quoting *Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2010 WL 3258259, at *7 (D.N.J. Aug. 16, 2010)). This more flexible application is particularly appropriate where the allegations concern a corporate defendant's internal knowledge and decisionmaking—matters as to which plaintiffs ordinarily lack access at the pleading stage. *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (observing that plaintiffs "cannot be expected to have personal knowledge of the details of corporate internal affairs").

---

[7] Defendant also moves to dismiss Plaintiffs' fraud claims insofar as they allege any affirmative misrepresentation, rather than an omission. Plaintiffs concede that they have not premised their fraud claims on any affirmative misrepresentation, and so the Court need not reach Defendant's argument.

Measured against that standard, the Amended Complaint pleads omission-based fraud with sufficient particularity. Plaintiffs identify the information allegedly withheld: the existence of the Mirror Defect in the side-view mirror assemblies of the Class Vehicles, which allegedly causes mirror vibration during ordinary driving and impairs the reflected view. Plaintiffs also identify the entity responsible for the alleged nondisclosure, Subaru, and allege the context in which the nondisclosure purportedly occurred: across Defendant's customer-facing materials (*e.g.*, Class Vehicle Monroney labels, advertisements), which uniformly omitted any mention of the defect. Plaintiffs further plead facts that support an inference of Subaru's prior knowledge of the defect, including pre-production and safety testing; warranty-claims and dealer repair data; consumer complaints submitted through dealers, customer-service channels, and Subaru's internal reporting systems; consumer complaints filed with NHTSA; and a prior technical service bulletin addressing similar mirror vibration issues in other Subaru models. Finally, Plaintiffs allege how the omission purportedly misled them and what Subaru allegedly obtained: they allege they would not have purchased or leased the vehicles, or would have paid less, had the defect been disclosed, and that Subaru benefitted from sales it otherwise could not have made, or could have made only at a reduced price.

These allegations inject a degree of precision and substantiation sufficient to place Defendant "on notice of the precise misconduct with which [it is] charged." *Frederico*, 507 F.3d at 200 (internal quotation marks omitted). Whether Plaintiffs can ultimately satisfy the legal elements of their specific claims is a separate question. But as to Rule 9(b), the Court concludes that Plaintiffs have pled omission-based fraud with an adequate degree of specificity. *See Bullard v. Jaguar Land Rover Auto. PLC*, No. 20-cv-14464, 2023 WL 4845873, at *12 (D.N.J. July 28, 2023) (finding similar allegations sufficiently pled) ("Rule 9(b) does not require a plaintiff to plead

exactly when, where, or how an *omission* [of a defect] occurred so long as the plaintiff 'otherwise inject[s] precision or some measure of substantiation into a fraud allegation.'"); *Shaaya v. Jaguar Land Rover N. Am. LLC*, No. 2:20-cv-5679, 2022 WL 2341599, at *12 (D.N.J. June 29, 2022) (same); *In re Subaru Battery Drain Prods. Liab. Litig.*, No. 1:20-cv-03095, 2021 WL 1207791, at *25 (D.N.J. Mar. 31, 2021) (same); *Kerr v. Gen. Motors LLC*, No. 24-cv-582, 2025 WL 2051621, at *12 (D. Del. July 22, 2025) (same). Defendant's Motion is therefore denied to the extent it seeks dismissal of Plaintiffs' fraud-based claims for failure to comply with Rule 9(b).

## 2. *Duty to Disclose*

Alternatively, Defendant contends that all of Plaintiffs' fraud-based claims should be dismissed because it owed Plaintiffs no duty to disclose the alleged Mirror Defect. Defendant's overarching argument rests on a categorical premise: that, absent a "fiduciary or confidential relationship," it had no obligation to disclose the alleged Mirror Defect. In advancing its arguments, Defendant treats Plaintiffs' common-law and statutory fraud theories as rising or falling together on this question, and Plaintiffs largely respond in kind. Following the parties' lead, the Court will therefore address whether the governing state laws recognize a duty to disclose on the facts alleged.

Beginning with Utah law, the Court first observes that a duty to disclose has not been categorically confined to fiduciary or confidential relationships. In fact, the Utah Supreme Court has long recognized that disclosure duties may arise from "a multitude of life circumstances." *Yazd v. Woodside Homes Corp.*, 143 P.3d 283, 286 (Utah 2006); *see also Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1162 (D. Utah 2018) (discussing examples of transactions and relations that may give rise to a duty to disclose). The existence of a duty to disclose turns on "the structure and dynamics of the relationship between the parties." *Yazd*, 143 P.3d at 286. This is a "multi-faceted,

case-specific" inquiry that takes into account "all the circumstances of [a] case." *Miner v. Miner*, 571 P.3d 788, 794 (Utah 2025) (quoting *Elder v. Clawson*, 384 P.2d 802, 804 (Utah 1963)). Among the "more prominent" factors to consider are disparities in "knowledge" and "sophistication" between the parties. *Yazd*, 143 P.3d at 286. Other factors include whether the information withheld "affects the value" of a particular subject matter, as well as the "general class" of persons to which the defendant belongs: "It is much more likely that a seller will be required to disclose information than a purchaser." *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1331 (Utah 1990).

Here, Plaintiffs submit that Defendant had a legal duty to disclose the Mirror Defect because it had "superior" and "exclusive" knowledge of it prior to when they purchased or leased the Class Vehicles. They allege that Defendant knew about the defect through its internal testing, a technical service bulletin, customer complaints made directly to Defendant and its dealerships, numerous NHTSA and online reports, and unusually high replacement mirror orders—all of which, they contend, showed the mirrors shook excessively and posed a safety risk. Since Defendant routinely monitored these data sources and continued to market the vehicles as safe and reliable, Plaintiffs assert that its exclusive and advanced knowledge of the defect triggered a duty to disclose the issue before sale.

At this stage of the proceedings, the Court must accept as true Plaintiffs' well-pleaded allegations. The nature, extent, and exclusivity of the knowledge alleged here may very well have given rise to a duty to disclose for purposes of a fraudulent nondisclosure claim. Taken as a whole, the Amended Complaint alleges sufficient facts to support a claim that Defendant had a duty to disclose the Mirror Defect. *See Mitchell*, 355 F. Supp. 3d at 1162 (applying Utah law) (finding plaintiffs sufficiently stated a duty to disclose where, among other things, it was pled that

defendants "were in a superior position to know the truth" concerning defendant's business practices); *see also In re Takata Airbag Prod. Liab. Litig.*, 348 F.R.D. 500, 521 (S.D. Fla. 2025) (finding that car manufacturer had duty to disclose airbag defect under Utah law based on its "exclusive or superior knowledge" of the same).

Turning to Texas law, the Court finds here too that duties to disclose may extend beyond fiduciary relationships. Texas appellate courts have identified at least four circumstances in which a duty to disclose arises, including "when one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth," and "when one party makes a partial disclosure and conveys a false impression, which gives rise to the duty to speak." *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 975 (N.D. Tex. 2014) (quoting *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners*, Ltd., 237 S.W.3d 379, 385 (Tex. App. 2007)). Plaintiffs predicate their fraud claims on both of these theories, contending that Defendant had a duty to disclose the Mirror Defect when, despite knowledge of the same, it continued to promote the Class Vehicles' as safe, reliable, and high quality. Failing to disclose the Mirror Defect made these representations materially misleading and thus gave rise to a duty to disclose it.

In reply, Defendant correctly points out that these holdings come from Texas's intermediate appellate courts, and that the Texas Supreme Court has yet to formally embrace such circumstances as sufficient to give rise to a duty to disclose. *See* Def.'s Reply at 10; *see also* Def.'s Mot. at 19 n.11. While that may be true, the Texas Supreme Court has not rejected them either. Its mere silence on the matter does not justify a categorical ruling from this Court holding, as a matter of Texas law, that duties to disclose are restricted to fiduciary or confidential relationships. The rulings of any state's intermediate appellate courts "must be accorded significant weight and should not be disregarded absent a persuasive indication that the highest state court would rule

otherwise." *Earl v. NVR, Inc.*, 990 F.3d 310, 313 (3d Cir. 2021) (quoting *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996)). Defendant has pointed to no such indication here.

In the alternative, Defendant submits that Plaintiffs' claims under Texas law (as well as those under Alaska law) all fail because the statements regarding vehicle safety were mere "puffery" that "do not constitute representations or disclosures that would trigger a duty to disclose." Def.'s Reply at 10; *see also* Def.'s Mot. at 15–16, 20. But Defendant identifies no authority holding that such statements can never inform a duty-to-disclose analysis under Texas or Alaska law, particularly where a plaintiff alleges the statements were made in the face of known and materially contrary information. The Court therefore declines to adopt a categorical rule, particularly at the pleading stage, that the alleged representations could not, as a matter of law, render the alleged omission misleading.

The Court need not address Defendant's duty-to-disclose arguments as to the remaining fraud-based claims. Plaintiffs have withdrawn all fraud claims under Florida law, and Defendant no longer presses a duty-to-disclose challenge to the California fraud claims. *See* Pls.' Opp'n at 1 n.1; Def.'s Reply at 11. Defendant's Motion is therefore denied to the extent it seeks dismissal of Plaintiffs' fraud-based claims for lack of a duty to disclose.

### 3. *Economic Loss Doctrine*

Lastly, Defendant argues that Plaintiffs' common-law fraudulent concealment claims under California and Utah law are barred by the economic loss doctrine. On this point, the Court agrees.

Both California and Utah recognize the economic loss rule, which generally precludes recovery in tort for purely economic losses where the relief sought is contractual in nature. *See*

*Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1282 (C.D. Cal. 2022) (stating that economic loss rule "prohibits plaintiffs from suing in tort for damages that lie only in contract"); *Zubiate v. Am. Fam. Ins. Co.*, 524 P.3d 148, 161 (Utah App. 2024) ("[T]he economic loss rule prevents recovery in tort when that same recovery is available in contract."). Plaintiffs argue that their fraudulent-concealment claims can survive because they have alleged violations of two different duties: a pre-sale duty to disclose the Mirror Defect, and a post-sale duty to repair it. But while Plaintiffs cite to conceptually distinct duties, they remain silent as to how exactly their damages differ. As far as the Court can discern, the damages Plaintiffs pursue in connection with these fraudulent concealment claims are exactly the same as the contractual remedies they pursue elsewhere. Simply stated, the harms Plaintiffs allege—the diminished value of the vehicles and related out-of-pocket losses—remain economic in character, and Plaintiffs identify no separate, noncontractual injury flowing from the alleged concealment that would take their claims outside the economic loss rule.

Accordingly, the Court grants Defendant's Motion and dismisses Plaintiffs' common-law fraudulent concealment claims under California and Utah law.

## D.    <u>Defendant's Remaining Arguments</u>

Lastly, Defendant's Motion advances a number of claim-specific challenges, though only two require discussion.

First, Defendant argues that Brenner's claim under California's Unfair Competition Law ("UCL") must be dismissed to the extent it seeks monetary damages, because relief under the UCL is limited to restitution and injunctive relief. *See Roffman v. REBBL, Inc.*, 653 F. Supp. 3d 723, 731 (N.D. Cal. 2023). Brenner does not dispute this limitation and clarifies that he seeks only equitable relief on his UCL claim. The Court therefore grants the Motion and dismisses the UCL

claim to the extent it seeks monetary damages.

Defendant's final argument concerns Chaidez's Utah-law class claims for damages outside the Utah Consumer Sales Practices Act ("UCSPA"). Defendant contends that, under Utah law, the UCSPA provides the exclusive avenue for class-wide damages relief, such that any non-UCSPA damages theories may not proceed on a class basis. Whatever the ultimate scope of the UCSPA's remedial scheme, Defendant's contention does not identify a defect in the pleading so much as it challenges the availability of class-wide damages as a remedy. That issue is more appropriately addressed at class certification, when the Court evaluates the propriety of proceeding on behalf of a class and the forms of relief that may be pursued under Rule 23. The Court therefore declines to resolve Defendant's UCSPA argument at this stage and denies the Motion on this ground without prejudice to renewal in connection with class certification.

## V.    CONCLUSION

For all of the reasons set forth above, the Court grants Defendant's Motion, in part, and dismisses with prejudice: Plaintiffs' claims for fraudulent concealment asserted under the laws of California and Utah (Count I, to the extent so pleaded); Plaintiffs' unjust enrichment claims (Counts II–III); and Plaintiff Brenner's SBA claim for breach of express warranty under California Civil Code § 1793.2(d)(2) (Count XII). The Motion is also granted as to Brenner's UCL claim (Count XV) to the extent it seeks monetary damages, and that aspect of the claim is likewise dismissed with prejudice. The remainder of the Motion is denied.

Dated: December 31, 2025

KAREN M. WILLIAMS, U.S.D.J.